## Case No. 11,775.

### In re RICHARDSON.

[7 Ben. 155.] [1]

District Court, S. D. New York. Feb., 1874.

BANKRUPTCY—EXPENSES OF CONTESTING CLAIM—PAYMENT OUT OF ESTATE.

Before the appointment of an assignee in bankruptcy, a reference to a register was had, on application of the bankrupt, to contest a claim of a creditor. The bankrupt was unable to pay any part of the expenses of such reference. *Held*, that they might be paid by the assignee out of the estate.

In this case the register certified that, before the election of assignee, the bankrupt [Clementina T. Richardson] objected to a proof of debt filed by one Sharpley, and made application to the court for a hearing on the claim, whereupon it was referred to the register to take proofs, which he took; that Sharpley had paid his share of the expenses of the reference, but the bankrupt had not paid any part of them, and had no means to pay them; and that the register had rendered a bill to the assignee, when appointed, for the bankrupt's share of the expenses, but the assignee doubted his right to pay it. The register certified the question whether the assignee would be justified in paying the bill, under the 28th section of the act [14 Stat. 530].

BLATCHFORD, District Judge. The question certified must be answered in the affirmative.

## Case No. 11,776.

### In re RICHARDSON et al.

[11 N. B. R. 114; [2] 7 Chi. Leg. News, 62.]

District Court, D. Missouri. Nov. 9, 1874.

BANKRUPTCY—EXEMPTIONS—PARTNERSHIP ASSETS.

R. & Co. were adjudged bankrupts. An assignee was duly appointed, who collected a large

1 [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

2 [Reprinted from 11 N. B. R. 114, by permission.]

amount of money belonging to the firm. None of the members of the copartnership had any individual estate, and all were heads of families. H. claimed certain exemptions under the state law, and applied to the court to have the amount allowed him out of the assets of the firm. *Held*, that if the individual estate is large enough to furnish the required exemption it should alone be subject thereto, if not, then the debtor has a right to have these exemptions allowed out of the copartnership estate. Exemption claims allowed.

[Cited, but not followed, in Re Boothroyd, Case No. 1,652. Cited in Re Melvin, Id. 9,-406. Cited contra in Re Corbett, Id. 3,220.]

On the 15th of December, 1873, four brothers, composing the firm of S. H. Richardson & Co., were adjudged bankrupts. An assignee was duly appointed, who collected a large amount of money belonging to the firm. All of the members of the copartnership were heads of families, but none of them had any individual estate. S. H. Richardson claimed certain exemptions under the state law, and applied to the court to have the amount allowed to him out of the assets of the firm.

James E. Withrow and Polk & Causey, for bankrupt.
Louis Gottschalk, for assignee.

TREAT, District Judge. This is a petition of S. H. Richardson for exemption to be allowed out of copartnership assets. At an early day this court held that, when there was no individual estate, exemptions could be allowed out of the copartnership assets. Based on technical grounds as to the legal character of copartnership estates, several United States district courts have refused to allow such exemptions; while other United States district courts have maintained the same views early announced by this court, resting their conclusions upon the scope and design, not only of state exemption acts, but of the more liberal provisions of the bankrupt act [of 1867 (14 Stat. 517)]. If a review were had of the various state acts and the decisions thereon, a more elaborate consideration of the policy of each state upon the subject would be needed than time presents, or than is necessary for this case. The bankrupt act contemplates that each bankrupt shall not only be put in no worse condition than he occupied previously by force of state statutes, but that he shall also have the benefit of its own humane provisions. Its manifest purpose is to leave him, on the surrender of all his assets for the benefit of his creditors, a sufficient amount, according to his condition in society, not to be reduced to instant and abject destitution, whereby he, and, it may be, his dependent and helpless family are stripped of food and home, and the means of procuring either. That act has at least this twofold object: First, to enable all the creditors to share equally in his assets; and, second, while discharging him, being honest and unfortunate, from the further obligation of his debts, to leave him some provision for himself and family until he can start anew in life. The liberal view to be taken of that act is illustrated in the case of Cox v. Wilder [Case No. 3,308], in which the United States circuit court overruled this court in the case even of a fraudulent conveyance. If, despite such a conveyance by husband and wife, they are, on its being set aside as fraudulent against creditors, reinstated in their homestead and dower rights, why not a fortiori, the needed or prescribed exemptions, in the absence of fraud, out of any assets in which the debtor was interested. But it is urged that the individual interest of a partner in copartnership assets is only in the surplus after copartnership debts are paid; but is not the grantor in a fraudulent conveyance, that is, fraudulent as to creditors, estopped from assailing the grant? If his creditors can set it aside for their own benefit, although it was valid as between the parties thereto, and the ground on which they can thus do so is that they have an interest in their debtor's property entitling them to subject it to the payment of their demands, and notwithstanding their rights and the acts of the grantor, he, when the creditors have divested the grantee, is remitted to his original position as to homestead and other exemptions in said property, why should not said debtor, despite his creditors' interest in copartnership assets, or the interest of copartnership creditors therein, still retain out of the copartnership assets, the amount of exemptions intended for the benefit of himself and family? If his individual estate is large enough to furnish the required exemptions, it should be alone subject thereto, just as his individual debts are primarily chargeable to his private estate. His individual creditors, if there is a surplus in the copartnership estate, receive the benefit thereof if the private estate is deficient, and vice versa. The copartnership creditors, if not paid out of the copartnership fund, have the benefit of the private estate if not exhausted in individual debts. Hence the technical rules as to the relationship of copartnership and individual creditors with respect to copartnership and private estates, if properly applied to exemptions, would remit the debtor to his private estate primarily, and, if that were insufficient, then to the copartnership estate. So far is the principle underlying the rule from defeating the humane doctrine contended for that logically it requires that doctrine to be asserted. The exemptions are for the "debtor's benefit," and apply to all his property, irrespective of the fact that creditors or others may have an interest therein. As among classes of creditors, individual and copartnership, they are permitted, as among themselves, to proceed against one or the other fund, respectively, and against both in certain contingencies; why, therefore, is not the debtor, under like contingencies, entitled to the same benefit?

There is nothing in the state statutes, or in the bankrupt act, to the contrary; and if we observe their scope and object, instead of narrowing the question to mere technical rules, we give due force to the wise and humane provisions of the law. This line of reasoning might be pursued to greater length, but enough has been said to vindicate the prior rulings of this court on the question. The exemptions claimed must be allowed.